IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:13-CR-186-5 |
| | ) | |
| DONALD RAY BECK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Donald Beck, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the Court to reduce his sentence. He contends that his chronic health conditions place him at a heightened risk of serious illness if he contracts COVID-19. His motion will be denied.

### Procedural History

In September 2013, Mr. Beck pled guilty to one count of conspiracy to distribute methamphetamine and one count of possession of firearms in furtherance of a drug trafficking crime. Minute Entry 9/6/2013; Doc. 182. Later that year, the Court varied down from the guideline range to sentence Mr. Beck to a total of 195 months imprisonment followed by five years of supervised release. Doc. 438 at 4. The Court also imposed restitution of $6,586.19.[1] *Id*. After post-conviction proceedings, the Court

---

[1] In its Statement of Reasons, the Court updated the presentence report to specify that Mr. Beck's restitution is joint and several with two of his co-defendants. Doc. 438 at 1. The Court otherwise made no changes and adopted the report in full. *Id*. For purposes of this motion, the presentence report was refiled at Doc. 606, and the Court primarily refers to that document.

reduced Mr. Beck's sentence to 171 months. Doc. 440. His projected release date is August 17, 2025. *See Find an inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Jan. 22, 2021).

In October 2020, Mr. Beck filed a motion for compassionate release. Doc. 598. A few weeks later, Mr. Beck, through counsel, filed a new motion for compassionate release and attached medical records and Bureau of Prisons records. Doc. 602. Briefing is complete and the probation office has filed a report.

## Background

Aside from his 2012 offenses, Mr. Beck has a relatively minor, but lengthy, criminal history comprised mostly of misdemeanors for shoplifting and worthless checks. Doc. 606 at ¶¶ 81–94. He married Angela Beck approximately 25 years ago, with whom he has two children. *Id*. at ¶ 112. He also has an older daughter from a previous relationship. *Id*. at ¶ 113. He has a long history of legitimate employment, working in the family business of servicing septic tanks for most of his life. *Id*. at ¶ 121.

In 2011, when he was approximately 42 years old, Mr. Beck began abusing methamphetamine, and soon thereafter he and his wife started operating a methamphetamine lab in their home in Surry County. *See id*. at ¶¶ 47–48, 119. They participated in a conspiracy to distribute methamphetamine that included many other participants and the operation of other labs. *Id*. at ¶¶ 11–30. Mr. Beck was one of the principal meth cooks in the conspiracy, *id*. at ¶¶ 40, 45–46, 51, and he provided at least one other co-conspirator with a trailer in which to cook meth. *Id*. at ¶ 41.

During a search of the Beck home on January 4, 2013, law enforcement located items consistent with the manufacture and use of methamphetamine and 12 firearms. *Id*. at ¶ 47. Several persons on the premises possessed methamphetamine, including Mr. Beck. *Id*. at ¶ 48. In the preceding months, Mr. Beck purchased approximately 56 grams of pseudoephedrine, which can be used to manufacture methamphetamine. *Id*. at ¶ 51.

After Mr. Beck was arrested on state charges and released on bond, *id*. at 1, he and his wife continued to manufacture and sell meth out of their home. *Id*. at ¶ 52. During another search just a few weeks later, law enforcement located items consistent with the manufacture of methamphetamine, a revolver and ammunition, drug paraphernalia, and numerous cell phones. *Id*. at ¶ 53. Mr. Beck was arrested that same day and released on secured bond one month later. He has been in federal custody since June 3, 2013, *id*. at 1, and has served a little more than half of his 171-month sentence.

Mr. Beck is now 51 years old. *Id*. at 3. He suffers from Type 2 diabetes, hypertension, and morbid obesity. Doc. 612 at 430. According to the CDC, people with Type 2 diabetes and obesity are at increased risk of severe illness should they contract COVID-19, and people with hypertension "might" be at an increased risk of severe illness from COVID-19. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 22, 2021).

Mr. Beck also has depression, glaucoma, knee pain that requires crutches, testicular pain, and a growth behind his right ear. Doc. 612 at 29, 430–32. While he says that he is receiving inadequate treatment for these conditions, especially the growth

behind his ear, he has produced no evidence to support that contention, and the BoP medical records show regular attention to these issues. *See*, *e.g.*, Doc. 615 at 1, 12; Doc. 612 at 17, 21, 26, 74–75, 98, 101, 122, 340, 348–66, 381, 383 (showing treatment for testicular pain, surgery, and aftereffects); Doc. 612. at 161–216, 346 (showing consistent administration of medication); Doc. 612 at 12, 29–31, 44, 346 (showing treatment for unidentified growth, including an ultrasound in September 2020). He has submitted no evidence that his care is below constitutional standards or that any of these conditions place him at higher risk of complications from COVID-19.

Mr. Beck is housed at FCI Edgefield in South Carolina, Doc. 602 at ¶ 1, where the COVID-19 virus is rampant. When the government filed its response brief on December 3, 2020, there was only one active case among inmates. *See* Doc. 611 at 8. As of now, some seven weeks later, the BoP reports that 43 inmates are currently infected. *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 22, 2021). While cases among staff have not increased, they also have not decreased. *Id*. (showing 22 positive staff as of 1/22/2021); Doc. 611 at 8 (reporting 22 staff positive as of 12/3/2020). Neither party has submitted any information about how many inmates have experienced complications or have been hospitalized due to the virus. And neither party has submitted evidence about the kind of care that infected inmates receive or about what, if any, precautions the BoP is taking to protect vulnerable inmates like Mr. Beck. It is well established that congregate living situations, like prisons, create many difficulties in stopping the spread of the virus. *See COVID-19 Guidance for Shared or Congregate Housing*, CDC,

4

https://www.cdc.gov/coronavirus/2019-ncov/community/shared-congregate-house/guidance-shared-congregate-housing.html (last visited Jan. 22, 2021).

Mr. Beck received two disciplinary infractions early in his sentence, including one for fighting with another inmate, which is serious. Doc. 604 at 2. He is enrolled in a GED program and has completed approximately 1,500 hours of education courses, including a drug education program. *Id*. He has an outstanding restitution balance of $4,383.61. *Id*. If released, Mr. Beck plans to live with his daughter in Ararat, North Carolina. The U.S. Probation Office has approved his release plan. Doc. 604.

## Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c).

Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision. For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the defendant must satisfy the administrative exhaustion requirement. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The defendant must also show that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission,[2] and

---

[2] The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. The Court has considered the old policy statement

5

that the relevant § 3553(a) sentencing factors merit a reduction.  *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).

Mr. Beck submitted a request for sentence reduction to the warden in May 2020, which was denied in July 2020.  Doc. 611-1.  He has exhausted his administrative remedies, as the government agrees.  Doc. 611 at 4–5.

Mr. Beck advances four grounds for immediate compassionate release, but three do not require much discussion.  He offers no evidence in support of his contentions that he is medically debilitated within the meaning of § 3582(d)(1), or that he is receiving inadequate medical attention from the BoP.  Doc. 602 at ¶ 12; Doc. 607 at 1.  He withdrew his third contention that he had tested positive for the COVID-19 virus.  *See* Text Order 1/4/2021; Doc. 618; Doc. 602 at ¶ 12.

Mr. Beck's final assertion, that his health conditions and the extent of the virus at Edgefield make him more susceptible to COVID-19 and its complications, Doc. 602 at ¶ 13, requires more discussion.  Although the mere existence of the pandemic is not, by itself, an extraordinary and compelling reason for a sentence reduction, *United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020), there is a consensus in the district courts that a serious risk of contracting COVID-19 combined with medical conditions placing an inmate a high risk of severe complications from COVID-19 can constitute extraordinary

---

applicable to motions brought by BoP as helpful but non-binding guidance.  *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020).

and compelling reasons for a sentence reduction.[3]  When consistent with the § 3553(a) factors, a sentence reduction in these circumstances may be appropriate.

Here, the government concedes that Mr. Beck's Type 2 diabetes, hypertension, and obesity place him at risk of serious complications and illness should he contract the virus.  Doc. 611 at 20.  The virus remains in heavy circulation at FCI Edgefield, with over 60 active cases among staff and inmates.  Courts reach different conclusions on whether these circumstances alone are sufficient to constitute extraordinary and compelling reasons for a sentence reduction.  *Compare United States v. Lujan*, Cr. No. 18-00013, 2020 WL 7554133, at *2 (D. Guam Dec. 20, 2020) (finding that obesity, hypertension, and diabetes in conjunction with the virus does not constitute extraordinary and compelling circumstances and collecting cases), *and United States v. Smith*, Crim. No. 16-169 (04) (MJD), 2020 WL 5424858, at *1 (D. Minn. Sept. 10, 2020) (same), *with United States v. Ford*, No. 13-CR-62-5-JPS, 2020 WL 5259254, at *3 n.4 (E.D. Wis. Sept. 3, 2020) (finding obesity, hypertension, and diabetes combined with an outbreak to be extraordinary and compelling circumstances and collecting cases).

In the face of this real risk but only hypothetical or potential harm, the Court will turn to the § 3553(a) factors.  Mr. Beck's criminal conduct was serious and involved the manufacture and distribution of large amounts of methamphetamine.  Mr. Beck possessed firearms in furtherance of the drug conspiracy and allowed his minor daughter to participate in producing methamphetamine out of their home.  Doc. 606 at ¶¶ 52–53, 58.

---

[3] *See United States v. Williams*, No. 1:13-CR-370-4, 2020 WL 5097490, at *3 n.4. (M.D.N.C. Aug. 28, 2020) (collecting cases).

Even after he was arrested on state charges and released on bond, he returned to manufacturing drugs and obtained another firearm to protect his operation. Methamphetamine is a dangerous, addictive drug that destroys individuals and families, and the need to deter and punish persons who place these drugs into the community is appropriate, as recognized by the significant sentences suggested by the guidelines when methamphetamine is involved. *See generally* U.S.S.G. § 2D1.1.

Mr. Beck compares himself to his wife, who received an almost identical sentence for her part in the conspiracy and was granted compassionate release in 2019. *See United States v. Beck*, 425 F. Supp. 3d 573 (M.D.N.C. 2019). He contends, in so many words, *see* Doc. 613 at 2–3, that because he and his wife share materially the same sentencing factors, if the Court finds extraordinary and compelling circumstances in his case, the Court should also grant the same relief that it granted in her case. Certainly, the Court is sensitive to unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). But no two sentencing situations are alike, even between married co-defendants.

Decisions on compassionate release motions, like all sentencing decisions, are not the result of a checklist of elements considered in a vacuum. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016) (explaining the district court's obligation to find an "appropriate balance" of relevant factors during sentencing); *Gall v. United States*, 552 U.S. 38, 50 (2007) ("[Courts] must make an individualized assessment based on the facts presented."). It requires balancing a particular defendant's circumstances and society's interests as they arise in the defendant's individual case. Decisions about whether a particular defendant's sentencing factors support release are made in light of

8

Case 1:13-cr-00186-CCE   Document 619   Filed 01/26/21   Page 8 of 11

his specific extraordinary and compelling reasons, not separate from those reasons. The policy statement applicable to BoP motions for sentence reductions, which provides helpful guidance, makes this overlap clear. *See Beck*, 425 F. Supp. 3d at 580 (noting the considerable overlap between the grounds for reductions under the old BoP policy statement and the § 3553(a) factors); *accord United States v. Bradshaw*, No. 1:15-CR-422, 2019 WL 7605447, at *3 (M.D.N.C. Sept. 12, 2019).[4]

Although comparisons between and among individual defendants are typically unhelpful, Mr. & Mrs. Beck's situation demonstrates both the uniqueness of each defendant's sentence and the overlapping considerations the Court must weigh in granting or denying a motion for sentence reduction. For example, the record shows that although Mrs. Beck was not a minor player in the criminal conspiracy, Mr. Beck played a "larger role in distributing the methamphetamine," *Beck*, 425 F. Supp. 3d at 584, which is reflected in part by his slightly longer sentence. *See id*. at 575 (showing Mrs. Beck's original sentence of 189 months).

Even more importantly, Mrs. Beck's sentence reduction was driven by the fact that she was suffering from invasive breast cancer while receiving constitutionally inadequate medical treatment. *Id*. at 585. Through lengthy delays that lasted up to eight months between medical examinations, her cancer spread, and she did not receive recommended

---

[4] Indeed, in the absence of a policy statement applicable to motions for sentence reduction made directly by defendants, courts have been forced to return to the pre-guideline process described by the Supreme Court as "the everyday business of judges . . . to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases before them." *Mistretta v. United States*, 488 U.S. 361, 395 (1989).

9

treatment due to the BoP's "gross mismanagement." *Id.* at 581. Without judicial intervention, Mrs. Beck faced the near certainty that her disease would continue to worsen, accompanied by the risk it would eventually lead to her death. The ordeal left Mrs. Beck in need of ongoing cancer treatment and therapy requiring significant time and energy on her part, such that her risk of recidivism was significantly reduced. *Id.* at 585.

While Mr. Beck does face a real risk of infection and complications from COVID-19, these risks are not certainties. It is uncertain if he will contract the virus, and even if he does, not everyone infected becomes seriously ill. The CDC says that symptoms can range from mild to severe illness, *see Symptoms of Coronavirus*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Jan. 22, 2021), and that some people may even be asymptomatic. *See COVID-19 Pandemic Planning Scenarios*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last visited Jan. 22, 2021) (reflecting a "current best estimate" that 40% of infections are asymptomatic.). The Court has a record, not a crystal ball, and it cannot predict whether any of Mr. Beck's risks will materialize. *See United States v. DeFranco*, No. 18-CR-207, Doc. 70 (M.D.N.C. Jan. 20, 2021).

Unlike his wife who needed serious medical care upon release, Mr. Beck's diabetes, obesity, and hypertension do not seriously restrict his activities or reduce the risk that he will engage in criminal conduct if he is released early. Outside of the conclusory and unsupported assertion that his diabetes is "poorly controlled," *see* Doc. 602 at ¶ 4, he makes no claim that his COVID risk factors cause him daily problems. Instead, he mainly describes discomfort from other physical ailments, *see id.* at ¶¶ 5–8,

10

that are not known to increase risk of complications from COVID-19. A lay review of the medical records shows that he receives medication and regular medical attention for his diabetes. *See*, *e.g.*, Doc. 612 at 5, 443–45.

The Court has twice determined that the nature and circumstances of Mr. Beck's offense and the other § 3553(a) sentencing factors support a long sentence, and Mr. Beck is not near the end of serving his time. Release would not promote respect for the law nor reflect the seriousness of Mr. Beck's crimes. *See* 18 U.S.C. § 3553(a)(2)(A). Balancing the sentencing factors against the uncertain nature of the risks he faces from COVID-19, the Court concludes that a sentence reduction is not appropriate. His motion will be denied.

It is **ORDERED** that the defendant's motions for compassionate release, Docs. 598, 602, are **DENIED**.

This the 26th day of January, 2021.

_____
UNITED STATES DISTRICT JUDGE

11

Case 1:13-cr-00186-CCE   Document 619   Filed 01/26/21   Page 11 of 11